**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

LETTER OPINION

March 23, 2009

Leonard Z. Kaufmann, Esq.
Cohn, Lifland, Pearlman, Herrmann
& Knopf, LLP
Park 80 Plaza West One
Saddle Brook, NJ 07663

Scott M. Wich, Esq.
Clifton Budd & DeMaria, LLP
300 Broadacres Drive, 3rd Floor
Bloomfield, NJ 07003

Vincent M. Giblin, Esq.
Pitta & Giblin, LLP
120 Broadway, 28th Floor
New York, NY 10271

Re:   <u>Gehringer, et al. v. Atlantic Detroit Diesel Allison, LLC, et al.</u>
      **Civil Action No.: 08-3917 (JLL)**

Dear Counsel:

This matter comes before the Court by way of Defendant Atlantic Detroit Diesel Allison, LLC's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's motion to dismiss is **granted in part and denied in part**. Plaintiffs have thirty (30) days in which to file an Amended Complaint which cures the pleading deficiencies addressed herein.

**I.     Relevant Factual and Procedural Background**[1]

Plaintiffs were, at all relevant times, employees of Atlantic Detroit Diesel Allison, LLC

---

[1] For purposes of adjudicating the pending motion to dismiss, the allegations contained in Plaintiffs' Complaint are presumed to be true. <u>See, e.g.</u>, <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996).

1

("Atlantic") and members of Local 15C of the International Union of Operating Engineers (the "Union"). (Compl., ¶ 1). Plaintiffs were trained diesel mechanics who were employed by Atlantic to perform mechanical repairs on automotive vehicles. (Id., ¶¶ 16, 17). In connection with this employment relationship, Atlantic had entered into a collective bargaining agreement with the Union. (Id., ¶ 17).

At some point in 2007, Atlantic entered into a contract with the New York City Bureau of Education to repair a significant number of buses (Id., ¶ 18). Such repairs were scheduled to be completed by Labor Day of that year – September 3, 2007. (Id.). Payment to Atlantic was dependent upon completion of the repairs by this date. (Id.). In order to meet this important deadline, an Atlantic Manager, Anthony Cirillo, authorized several changes in the workplace procedure in August 2007. (Id., ¶¶ 19, 20). Generally speaking, Cirillo told the employees that they had "carte blanche" to do whatever was necessary to get the job done in time. (Id., ¶ 20). Cirillo also authorized payment based on the number of buses completed, as an incentive to complete the project on time. (Id., ¶ 21). Finally, Cirillo also authorized a system whereby, so long as the workers completed two buses per day, they would be paid for a complete eight (8) hour day, regardless of the actual hours spent. (Id.). Based on Cirillo's assurances, Plaintiffs acted in accordance with his directives. (Id., ¶ 25).

On September 10, 2007, after successful completion of the project, Plaintiffs were each accused of improper conduct and summarily informed of their termination. (Id., ¶¶ 28-30). Atlantic undertook this termination process without any prior notice to the Plaintiffs and without affording Plaintiffs an opportunity to participate in a grievance procedure. (Id., ¶ 32). The Union declined to represent Plaintiffs in challenging the adverse action taken by Atlantic. (Id., ¶¶ 33, 34). On January 8, 2008, the Union informed the Plaintiffs that it had completed its own investigation and that it would take no further action on behalf of the Plaintiffs. (Id., ¶ 36). Thereafter, Atlantic began disseminating false information about the Plaintiffs. (Id., ¶ 60). As a result of Atlantic's actions, many of the Plaintiffs have had difficulty in finding new employment. (Id., ¶ 37).

In light of the foregoing, Plaintiffs commenced the instant cause of action in July 2008. The case was originally filed in the Superior Court of New Jersey, Law Division, Bergen County, and was removed to this Court on August 5, 2008 on the basis that all claims arise under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[2] Plaintiffs' Complaint alleges five claims for relief: (1) breach of the duty of fair representation as against the Union, (2) wrongful discharge in breach of the collective bargaining agreement ("CBA") as against Atlantic, (3) breach of the implied covenant of good faith and fair dealing as against Atlantic, (4) tortious interference with prospective economic advantage as against Atlantic, and (5) breach of contract as against the Union. Defendant Atlantic (hereinafter referred to as "Defendant") filed a motion to dismiss in lieu of an Answer on August 12, 2008.[3] Defendant seeks dismissal of Counts Two, Three and Four of Plaintiffs' Complaint.

---

[2] This Court's jurisdiction is premised on 28 U.S.C. § 1331.

[3] Defendant Local 15C International Union of Operating Engineers filed an Answer on August 13, 2008. See CM/ECF Docket Entry No. 6.

## II.   Legal Standard

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000). Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). Thus, courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997); see also In re Nice Sys., Ltd. Sec. Litig., 135 F.Supp.2d 551, 565 (D.N.J. 2001). In evaluating a plaintiff's claims under this standard, a court may generally look only to the facts alleged in the complaint and any accompanying attachments and may not look at the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).

## III.   Discussion

Defendant seeks dismissal of Counts Two, Three and Four of Plaintiffs' Complaint on various grounds.

### 1.   Count Two – Breach of the CBA

Counts One and Two of Plaintiffs' Complaint allege that: (1) the Union breached their duty of fair representation by failing to fully investigate Plaintiffs' discharges, and (2) Atlantic breached the parties' CBA by improperly discharging Plaintiffs. (Compl., ¶¶ 43-44; 50-51). Such claims have collectively been referred to as "hybrid" claims under § 301 of the LMRA.[4] Although Plaintiffs' Complaint makes no reference to such "hybrid" claims, the LMRA, or § 301 thereof, Plaintiffs' brief in opposition to Defendant's motion makes clear that Counts One and Two of Plaintiffs' Complaint seek to assert such "hybrid" claims.[5] See Pl. Opp'n Br. at 8.  Atlantic now moves to dismiss the

---

[4] In DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 164-66 (1983), the Supreme Court of the United States referred to a plaintiff's simultaneous assertion of (1) breach of collective bargaining agreement as against his employer, under § 301 of the LMRA, and (2) breach of duty of fair representation as against his union, which is implied under the scheme of the National Labor Relations Act, as a "hybrid § 301/fair representation" claim. In doing so, the Court explained that such claims are "inextricably interdependent" given that the employee-plaintiff "must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union."

[5] Although the Court construes Counts One and Two of Plaintiffs' Complaint as "hybrid" claims for purposes of adjudicating the instant motion, in this Circuit, it is well-settled that a plaintiff may not amend the complaint through statements contained in a brief filed in opposition to a motion

3

second prong of Plaintiffs' hybrid claim – the breach of contract claim.[6]

Defendant moves to dismiss Count Two on the basis that "Plaintiffs cannot allege that their discharges were in breach of the collective bargaining agreement where the contract does [not] limit the right to discharge." Def. Br. at 4. In this regard, Defendant attaches the CBA to its brief and urges the Court to review its terms for purposes of assessing which rights – if any – Plaintiffs had against discharge, and therefore, whether they can ultimately show that such rights were breached. According to the Defendant, because the CBA places the right to discharge in the exclusive possession of Atlantic, Atlantic cannot be found to have breached the terms of the CBA by discharging the Plaintiffs. Although Defendant would have the Court assess the merits of Plaintiffs' breach of contract claim at this juncture, any such determination would be premature at the motion to dismiss stage.[7] See, e.g., Scheuer, 416 U.S. at 236 ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). Nevertheless, based on the reasons that follow, the Court agrees that Count Two, as currently pled, fails to state a claim upon which relief may be granted.

Count Two alleges that: (1) Plaintiffs were the third party beneficiaries of the valid contract between the Union and Atlantic (Compl., ¶ 49); (2) Plaintiffs were discharged without cause or proper foundation (Id., ¶ 50); and (3) Plaintiffs have suffered damages as a result of this wrongful discharge in violation of the CBA (Id., ¶ 51). Although the Court draws all reasonable inferences in favor of the Plaintiffs, such conclusory allegations and legal conclusions will not suffice to raise Plaintiffs' right to relief about the speculative level. See generally Twombly, 127 S.Ct. at 1964-65; Chemtech Intern., Inc. v. Chem. Injection Tech., Inc., 170 Fed. Appx. 805, 808 (3d Cir. 2006) ("While a plaintiff may rely on the court to draw all reasonable inferences in his favor at the Rule 12(b)(6) stage, a plaintiff who relies on the court to fill in the blanks for all of the information missing in his complaint does so at his peril."). For instance, the Complaint does not allege which

---

to dismiss. See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988); Shoenfeld Asset Mgmt. LLC v. Cendant Corp., 142 F.Supp.2d 589, 613-14 (D.N.J. 2001). Because the Court finds dismissal of Count Two, as currently pled, appropriate, Plaintiffs are directed to clearly specify the legal basis upon which they intend such claim to proceed should they choose to cure the pleading deficiencies in Count Two.

[6] To establish a breach of contract claim, Plaintiffs have the burden of showing that (a) the parties entered into a valid contract, (b) that Defendant failed to perform its obligations under the contract, and (c) that Plaintiffs sustained damages as a result thereof. See Murphy v. Implicito, 2005 WL 2447776, at *4 (N.J. Super. Ct. App. Div. Sept. 22, 2005) (citing Coyle v. Englander's, 199 N.J. Super. 212, 223 (App. Div. 1985)).

[7] The Court, therefore, declines to the consider the documents submitted by Defendant in connection with its motion to dismiss. See, e.g., Jordan, 20 F.3d at 1261.

portion of the CBA has been breached.[8]  See, e.g., id. ("Stating that a contract was breached is stating a legal conclusion. Stating that a document was signed, that the document called for certain performance, and that performance did not occur are all factual allegations that would underpin this legal conclusion.").  Rather, Plaintiffs have offered a formulaic recitation of the elements of a breach of contract claim with absolutely no facts – at all – in support of this breach.  Plaintiffs have, therefore, failed to put the Defendant on notice as to the substance of this claim.[9]  See Fed. R. Civ. P. 8(a)(2).  Plaintiffs' breach of contract claim is, therefore, dismissed without prejudice.  See, e.g., Chemtech Intern., Inc., 170 Fed. Appx. at 808 (dismissing breach of contract claim and noting that "[t]o adequately state a claim for breach of contract under Rule 12(b)(6), Chemtech had to do more than simply assert that CIT 'breached' or 'revoked' a contract.").

**2.     Count Three – Breach of the Implied Covenant of Good Faith and Fair Dealing**

Count Three of Plaintiffs' Complaint alleges that "there exists in every contract an implied covenant of good faith and fair dealing." (Compl., ¶ 53).  Atlantic's actions in "giving directives to plaintiff as to the manner in which work was to be done and in which plaintiffs were to be paid and then terminating them for carrying out those directives constitutes a breach of the said implied covenant of good faith and fair dealing." (Id., ¶ 54).  Defendant moves to dismiss this count on the basis that it is preempted by § 301 of the LMRA.

Under New Jersey law,[10] all contracts include an implied covenant that the parties to the contract will act in good faith.  See, e.g., Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 690 A.2d 575, 587 (N.J. 1997).  Proof of a party's "bad motive" or "intention" must support a claim of breach of contract grounded on an alleged breach of the implied covenant of good faith and fair dealing. See Reddy v. MedQuist, Inc., No. 06-4410, 2009 WL 250050, at *3 (D.N.J. Jan. 29, 2009)

---

[8] It appears that Plaintiffs themselves are not yet entirely certain which aspects of the CBA they are claiming have been breached.  For example, in opposing Defendant's motion, Plaintiffs argue, on the one hand, that "at issue" is the part of the CBA describing that "Employers are at liberty to employ and discharge Employees." Pl. Opp'n Br. At 8.  Plaintiffs go on to argue, however, that "other sections" of the CBA also "impact on whether there was a breach." Id. at 9.  For instance, Plaintiffs argue that "Article III Section 5a requires layoffs to be done according to seniority. This did not occur in the matter at bar." Pl. Opp'n Br. at 9.  Such statements – which are notably absent from Plaintiffs' Complaint – suggest that different aspects of the CBA may have been breached.

[9] To the extent that Plaintiffs have attempted to supplement and/or clarify the allegations contained in their Complaint by way of their brief in opposition to Defendant's motion, (a) Plaintiffs may not amend the Complaint through statements contained in a brief filed in opposition to a motion to dismiss, PepsiCo, Inc., 836 F.2d at 181, and (b) "discovery should not serve as a fishing expedition during which Plaintiff searches for evidence in support of facts he has not yet pleaded." Smith v. Lyons, Doughty & Veldhuius, P.C., No. 07-5139, 2008 WL 2885887, at *5 (D.N.J. July 23, 2008).

[10] The parties do not dispute that New Jersey law applies.

(quoting Wilson v. Amerada Hess Corp., 168 N.J. 236, 773 A.2d 1121 (N.J. 2001)).  According to Defendant, resolution of Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing necessarily requires an interpretation of the CBA and is, therefore, preempted by § 301 of the LMRA.  Based on the reasons that follow, this Court agrees.

"When resolution of a state law claim depends upon interpretation of a collective bargaining agreement, the claim must either be resolved according to federal law under § 301 of the . . . [LMRA] . . . or dismissed as preempted by federal law."  Pierson v. MAFCO Worldwide Corp., No. 96-258, 1996 WL 227310, at *3 (D.N.J. 1996) (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1984)).  Thus, to the extent Count Three is brought pursuant to state law, it must be dismissed as preempted by § 301. See, e.g., Allis-Chalmers Corp., 471 U.S. 202 at 218 (dismissing breach of implied covenant of good faith and fair dealing claim as preempted by § 301 and noting that "[b]ecause the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation."); Pagano v. Bell Atl.-New Jersey, 988 F. Supp. 841, 846 (D.N.J. 1997) (dismissing breach of implied covenant of good faith and fair dealing claim as preempted by § 301 of the LMRA). Plaintiffs do not dispute this. See Pl. Reply Br. at 12.  Rather, Plaintiffs argue that this claim is actually one brought pursuant to §301.  To the extent Plaintiffs seek to bring a § 301 claim for breach of an implied covenant of good faith and fair dealing, such appears to be subsumed in Plaintiffs' § 301 hybrid claims (asserted in Counts One and Two of Plaintiffs' Complaint).  In any event, it is clear that Count Three – which makes absolutely no reference to § 301  – fails to give Defendant notice of the true nature of the claim and the legal grounds upon which it rests.  See generally Fed. R. Civ. P. 8(a)(2).  Count Three is, therefore, dismissed without prejudice.

**3.     Count Four – Tortious Interference with Prospective Economic Advantage**

Count Four of Plaintiffs' Complaint alleges that Atlantic disseminated false information regarding the Plaintiffs' improper actions after their wrongful termination. (Compl., ¶¶ 57, 60).  As a result, prospective employers believed that Plaintiffs had acted improperly during their tenure as employees of Atlantic. (Id., ¶ 59).  In doing so, Atlantic intentionally and maliciously interfered with Plaintiffs' ability to find meaningful and gainful employment. (Id., ¶¶ 60, 61).

To state a successful claim for tortious interference under New Jersey law,[11] Plaintiffs must demonstrate that: (1) Plaintiffs were in "pursuit of business," (2) Defendant interfered intentionally and with malice, (3) Defendant's interference caused the loss of prospective gain, and (4) that such loss was the proximate cause of Plaintiffs' injuries.  Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751-752 (1989).  Defendant moves to dismiss this claim on the basis that it too is preempted by § 301 of the LMRA given that the Court will be required to determine whether Atlantic acted without justification pursuant to the terms of the CBA in order to address this claim.  In particular, Defendant argues that "[i]f the discharges did not violate any provisions of the agreement, [Atlantic's] alleged dissemination of such information was certainly not 'without justification.' " Def. Reply Br. at 5.

---

[11] Again, the parties do not dispute that New Jersey law applies to this claim.

While Defendant's argument is well taken, on its face, Plaintiffs' tortious interference claim falls outside the complete preemption application of § 301, which requires a dispute relating to the violation of a collective bargaining agreement. See 29 U.S.C. § 185(a); Allis-Chalmers Corp., 471 U.S. at 220. The tortious interference alleged in the Complaint relates to prospective contractual relationships between Plaintiffs and third-parties, not to a dispute involving the CBA. Moreover, the dissemination of false information alleged refers not to "false information" regarding Plaintiffs' wrongful discharge – which could relate to the CBA – but rather, to Plaintiffs' alleged improper actions during their employment with Atlantic. See Compl., ¶ 59. Although discovery may ultimately reveal that adjudication of this claim does involve interpretation of the CBA, thereby implicating § 301 preemption, dismissal of this claim on such a basis is not warranted at this time.[12]

### IV.     Conclusion

Based on the reasons set forth above, Defendant's motion to dismiss is **granted in part and denied in part.** Plaintiffs' tortious interference claim (Count Four) may proceed at this time. Plaintiffs' breach of contract (Count Two) and breach of the implied covenant of good faith and fair dealing claims (Count Three) are hereby dismissed without prejudice. Plaintiffs have thirty (30) days in which to file an amended complaint to cure the pleading deficiencies in such claims. Plaintiffs failure to do so will result in dismissal of such claims with prejudice.

An appropriate Order accompanies this Letter Opinion.

/s/ Jose L. Linares
United States District Judge

---

[12] See, e.g., Bergen Reg'l Med. Ctr., L.P. v. Health Prof'ls, No. 05-2596, 2005 WL 3216549, at *3 (D.N.J. Nov. 29, 2005) (denying motion to dismiss tortious interference claim on the basis of preemption where plaintiff's claim related to the contractual relationship between plaintiff and a third-party, as opposed to the collective bargaining agreement itself).